## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| METROPCS, a brand of T-MOBILE | § | |
| USA, INC., a Delaware Corporation, | § | |
| Plaintiff, | § | |
| v. | § | **Misc. Action No. 3:18-mc-00037-S** |
| | § | |
| ISAIAH MICHAEL THOMAS, et al., | § | |
| Defendants. | § | **Referred to U.S. Magistrate Judge[1]** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court are Jason Frazin's *Rule 60(b) Motion to Modify Order on Fee Reduction*, filed April 5, 2021 (doc. 56), and *Metro's Response in Opposition to Frazin's Rule 60 Motion*, filed April 26, 2021 (doc. 57), which includes a motion for sanctions. Based on the relevant filings, evidence, and applicable law, both motions should be **DENIED**.

### I. BACKGROUND

On May 22, 2018, T-Mobile USA, Inc., moved to compel non-party Jason Frazin to comply with a subpoena for information in connection with a Pennsylvania lawsuit involving its MetroPCS brand (Metro). (doc. 1.) On June 12, 2018, the court in a related miscellaneous action also pending in this district quashed a similar Metro subpoena issued in the same lawsuit. *See MetroPCS v. Thomas*, No. 3:18- MC-029-K (N.D. Tex.), doc. 21. Three days later, on June 15, 2018, Frazin responded to the motion to compel, arguing that it should be denied because Metro had failed to properly serve the subpoena, and that he should be awarded his attorney's fees incurred in opposing the motion. (doc. 7.) He also filed a motion to strike portions of a declaration attached to the motion to compel. (doc. 9)

On June 29, 2018, Metro filed a notice of the decision in the related action and stipulated

---

[1]By electronic order of reference filed July 3, 2018 (doc. 13), this case was referred for full case management.

to entry of an order dismissing its motion to compel without prejudice; it alternatively requested a seven-day extension of time to file a reply in support of its motion. (doc. 10.) On July 3, 2018, Frazin moved to strike the request for an extension of time and for sanctions against Metro on grounds that that it had not conferred with his counsel about the requested extension of time, in violation of the applicable rules. (doc. 12 at 1-2.)[2] Before filing the motion, Frazin's attorney exchanged emails with Metro's counsel regarding its stipulation and alternative request for an extension of time. (*See* doc. 56-1.) In an email dated July 3, 2018, Frazin's attorney stated that he would agree to a stipulated order denying the motion to compel and to terminate the request for attorney's fees if Metro would stipulate to not seeking further discovery from Frazin. (*Id.* at 2.)

On July 17, 2018, a hearing was conducted concerning the motions to strike and for sanctions. (doc. 15.) Metro's counsel explained that she and co-counsel did not confer with Frazin's attorney before filing the notice of stipulation because, among other reasons, he would only communicate with its local counsel. (doc. 27 at 6.)  She acknowledged that after filing the notice of stipulation, "there were emails back and forth . . .  between our co-counsel and [Frazin's attorney] in which he indicated that if we agreed to all the relief he wanted, that he would agree [to the stipulated dismissal], but otherwise not." (*Id.* at 7.) At the hearing, Frazin's attorney admitted that he had refused to confer with anyone other than local counsel, but he stated that he would have talked with any Metro attorney who called him. (*Id.* at 14-15.) The Court found that Frazin's motion for sanctions based on Metro's failure to comply with the conference requirement was not well-founded, and that "other circumstances [made] an award of expenses unjust" under

---

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

2

Rule 37, because Frazin's attorney admitted that he had refused to confer with Metro's non-local counsel, and early resolution of the underlying dispute could have been reached with a phone call to opposing counsel to discuss the related action. (*Id.* at 15-16.) Frazin's motion to strike portions of the declaration in support of the motion to compel was granted, but his motions for sanctions and to strike Metro's motion for an extension of time were denied. (doc. 16.)

On July 23, 2018, a second hearing was conducted, during which Metro's motion to compel was denied because Frazin had not been personally served with the subpoena. (doc. 28 at 23-24.) Except for the fees incurred in bring the "original motion to compel," Frazin's request for attorney's fees was denied. (*Id.* at 24-25.) He was reminded that his motion for sanctions had been denied, in part, because "refusing to confer with the other side and then moving for sanctions on a basis for their failure to confer is not good faith." (*Id.* at 24.)

On August 6, 2018, Frazin filed his motion for attorney's fees, requesting $37,126.50 for 46.7 hours of work at an hourly rate of $795. (doc. 23 at 18.) At a hearing on October 4, 2018, Frazin's attorney claimed the total amount was justified because he had attempted to confer with Metro's counsel at each stage of the proceedings, but Metro "refused to agree on any issue." (doc. 35 at 16.) He stated that email correspondence between him and Metro's counsel confirmed those attempts, and that he would file the emails post-hearing if requested. (*Id.* at 16-17.)  The Court found that Frazin was entitled to some of his fees, but the total number of hours requested was "clearly excessive and unreasonable," especially for a case involving a "straight-up procedural issue." (*Id.* at 21-22.) Notably, some of the requested hours were for fees that it had already found were not compensable or had declined to award in relation to the motion to strike, and there were excessive hours requested for certain tasks, including three hours billed for a 43-minute hearing.

(*Id.* at 19, 21-22.) Frazin also failed to sufficiently describe his attorney's qualifications in support of the $795 hourly rate. (*Id.*) Frazin was ultimately awarded fees in the amount of $4,800 for eight hours of work at an hourly rate of $600. (doc. 34.)

On April 3, 2020, the district court overruled Frazin's objections to the order on his motion for fees.  (doc. 47.) Frazin appealed the order to the Fifth Circuit on April 22, 2020. (doc. 48.) On November 18, 2020, the Fifth Circuit dismissed the appeal as frivolous, and awarded Metro its attorney's fees and costs against Frazin. (doc. 51.)

Frazin seeks modification of the fee order under Rule 60 of the Federal Rules of Civil Procedure. (doc. 56 at 7.) Metro responded and moved for sanctions against Frazin's attorney under 28 U.S.C. § 1927 or the Court's inherent sanction power on April 26, 2021. (doc. 57.) Frazin replied on May 10, 2021. (doc. 58.)

## II.  RULE 60

Frazin relies on Rules 60(b)(3) and 60(d)(3) in support of his motion "to correct the record to restore the good name and reputation of [his] Counsel, and jointly, to reconsider the fee reduction applied to [his] fee application." (doc. 56 at 3, 7.)

### A.    <u>Rule 60(b)(3)</u>

Rule 60(b) provides that a court may relieve a party from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered earlier; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or it is based on an earlier judgment that has been reversed or vacated, or that applying the judgment prospectively is no longer equitable; or (6) any

other reason that justifies relief.  Fed. R. Civ. P. 60(b)(1)-(6). "A party making a Rule 60(b)(3) motion must establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *In re Isbell Records, Inc.*, 774 F.3d. 859, 869 (5th Cir. 2014) (citing *Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir. 1990)) (emphasis, internal quotation and citation omitted); *see also Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) ("The conduct complained of must be such as prevented the losing party from fully and fairly presenting his case or defense."). "Determining whether a party has made a sufficient showing to warrant relief lies in the sound discretion of the district court." *Gen. Universal Sys. Inc. v. Lee*, 379 F.3d 131, 157 (5th Cir. 2004).

Here, Frazin argues that "a ninety percent fee reduction was imposed on [his] attorney's fees, based largely on [Metro's] Counsel's representations to the Court that [his attorney] had purportedly failed to confer after [it] filed its 'stipulation'." (doc. 56 at 2.) Although he provides emails exchanged between his attorney and Metro's counsel as proof that his attorney did confer with them before filing his motion to strike, they are not clear and convincing evidence that Metro engaged in fraud, misrepresentation, or other misconduct. (*See* doc. 56-1.) At the first hearing, Metro's counsel expressly stated that after filing their stipulation, "there were emails back and forth . . . between our co-counsel and [Frazin's attorney] in which he indicated that if we agreed to all the relief he wanted, that he would agree [to the stipulated dismissal], but otherwise not." (doc. 27 at 7.) This statement is clearly consistent with the emails.

Even assuming for purposes of his motion that Metro misrepresented that Frazin's attorney failed to confer, Frazin cannot show that he was prevented from fully and fairly presenting his

case. *See In re Isbell Records*, 774 F.3d. at 869. The emails that allegedly establish proof of Metro's misrepresentations were in Frazin's attorney's custody, and they were discussed at two of the hearings. (*See* docs. 27 at 7; 35 at 16-17.)  Frazin had the opportunity to present the emails in support of his motion for fees, but he declined to do so.

Because Frazin has not shown by clear and convincing evidence that Metro engaged in fraud, misrepresentation, or other misconduct, or that the alleged misconduct deprived him of the opportunity to fully and fairly present his case, his Rule 60(b)(3) motion should be denied.

**B.     Rule 60(d)(3)**

Rule 60(d)(3) provides that "[t]his rule does not limit a court's power to ... set aside a judgment for fraud on the court." The standard for relief based on "fraud on the court" is very demanding, however. *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009). Relief is reserved for only the most egregious misconduct, "such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." *Rozier*, 573 F.2d at 1338. It requires a showing of an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id.* (citation omitted).  It should "embrace only the species of fraud which does or attempts to, defile the court itself." *Kerwit Medical Products, Inc. v. N & H Instruments, Inc.*, 616 F.2d 833, 937 (5th Cir. 1980) (citation omitted). "Less egregious misconduct comes within the scope of Rule 60(b)(3)." *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989). Courts are given wide discretion in determining whether relief should be granted under Rule 60(d)(3) based on fraud. *Buck v. Thaler*, 452 F. App'x 423, 431 (5th Cir. 2011).

Frazin generally alleges that when Metro represented to the Court that his attorney "purportedly failed to confer with opposing counsel to resolve the underlying dispute despite [its]

6

'stipulation', [its] Counsel were engaging in fraud upon the court and misrepresenting facts as to which they were personally aware and had participated." (doc. 56 at 3.) As discussed, he has not identified a single fraudulent statement in the record to support this allegation, however. Because Frazin has not alleged or provided any evidence to support the required level of egregious misconduct for relief under Rule 60(d)(3), his request for relief under this rule should be denied. *See Rozier*, 573 F.2d at 1338.

### III.  SANCTIONS

In its response to Frazin's Rule 60 motion, Metro argues that sanctions against his attorney are warranted, and that "[a]n award of fees to [it] is appropriate under 28 U.S.C. § 1927 or this Court's inherent authority." (doc. 57 at 26-27.)

**A.**  **28 U.S.C. § 1927**

Section 1927 of the United State Code, Title 28, provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Before a court can award sanctions under § 1927, it must make detailed findings that the proceedings were both unreasonable and vexatious. *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). This standard requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). The liability created under § 1927 is only for excessive costs due to persistent prosecution of a meritless claim. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). Courts often use repeated filings, despite warnings from the court, or other proof of excessive

7

litigiousness, to justify sanctions. *See Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988) (noting that this section prohibits "the persistent prosecution of a meritless claim") (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc)); *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002).

The Fifth Circuit advises courts to impose sanctions under § 1927 "sparingly," and further cautions that except when the entire proceeding has been unwarranted, unreasonable, and vexatious, and should therefore not have been initiated nor pursued, it will be inappropriate under § 1927 to shift the entire financial burden of an action's defense. *See Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996) (citing *Calhoun*, 34 F.3d at 1297). Under § 1927, monetary sanctions for expenses, costs, and attorneys' fees may be "imposed only on offending attorneys; clients may not be ordered to pay such awards." *Matta v. May*, 118 F.3d 410, 413-14 (5th Cir. 1997) (citing *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994)).

Here, Metro generally argues that § 1927 sanctions are warranted against Frazin's attorney because his "pattern of excessive litigiousness, abuse of procedure, and baseless arguments in this case and on appeal is well-documented and goes beyond legitimate zeal." (doc. 57 at 26.) It contends that Frazin's Rule 60 motion "is not based in law or fact, the arguments have been previously raised and repeatedly rejected, and the 'new evidence' is not new nor does it contradict anything in the record," and that it "misrepresents the record on appeal and, through selective editing, the findings of this Court." (*Id.*) Metro concludes that "[t]he lack of any legitimate grounds for this motion establishes that Frazin's counsel is acting in bad faith and with an improper motive

or reckless disregard of the duty owed to the court." (*Id.*)

As discussed, Frazin has failed to make a sufficient showing to warrant relief under Rule 60, and it has been recommended that his motion be denied. Even if the grounds pursued for relief from the order were baseless, this alone does not mean they were brought in bad faith or for an improper purpose. *See Hencinski v. Austin Com., L.P.*, No. 3:05-CV-2368-D, 2006 WL 325764, at *2 (N.D. Tex. Feb. 13, 2006) (explaining that "there must be a showing of improper motive on the part of an attorney, independent of a showing that the claims pursued were baseless" to meet the high threshold for awarding costs under § 1927). As noted, courts have relied on repeated filings, despite warnings from the court, or other proof of excessive litigiousness to justify sanctions. *See Nat'l Ass'n of Gov't Employees*, 844 F.2d at 224; *see also EsNtion Records, Inc. v. TritonTM, Inc.*, No. 3:07-CV-2027-L, 2010 WL 3446910, at *5 (N.D. Tex. Aug. 31, 2010) (finding that party forced to defend against "objectively unreasonable" claims for which there was no evidence had not shown that opposing counsel had unreasonably and vexatiously multiplied the proceedings, bad faith, improper motive or reckless disregard so as to warrant an award for attorney's fees under § 1927). Although Metro argues that Frazin's motion generally relied on the same arguments that have been previously raised and repeatedly rejected in his other filings for more money in fees, it has not shown that he previously made the exact same arguments in other proceedings or that he was warned about further filings, however. Additionally, it offered no evidence of "specific conduct" on his part to show that he filed the motion in bad faith or for an improper purpose. *See EsNtion Records*, 2010 WL 3446910, at *5. Its allegations of the persistent prosecution of a meritless argument is based on a single motion. This is insufficient to show bad faith. *See Oblio Telecom, Inc. v. Patel*, No. 3:08-CV-0279-L, 2010 WL 99353, at *3 (N.D. Tex.

9

Jan. 8, 2010) (noting "bad faith" of counsel in bringing lawsuit or vexatiously multiplying proceedings cannot be inferred from pleadings alone).

Because Metro has failed to meet its burden to establish that the Rule 60 motion was both unreasonable and vexatious, it would not be appropriate under § 1927 to shift the entire cost of defense. *See Calhoun*, 34 F.3d at 1297. Accordingly, its request for an award of fees against Frazin's attorney under § 1927 should be denied.

**B.    Inherent Power**

Courts possess the inherent power "to protect the efficient and orderly administration of justice and ... to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (citations omitted). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "[T]he threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). A court's inherent power is not "a broad reservoir of power, ready at the imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom. Chambers*, 501 U.S. at 32.

Before imposing sanctions against a party under its inherent power, the court must make a specific finding that the party acted in bad faith. *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014)

10

(citing *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (citation omitted)). Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *Turfgrass Grp., Inc. v. Ne. Louisiana Turf Farms, LLC*, No. CIV.A. 10-1354, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)). Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay. *See Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988). The court's finding of bad faith "must be supported by clear and convincing proof," which is a "high standard" that requires "more than a preponderance of the evidence." *See Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001) (citing *In re: Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)). The evidence supporting a finding of bad faith "must be so direct and weighty as to leave the factfinder with a firm belief in the truth of the facts of the case." *See id.* "Courts have the authority to make credibility determinations to resolve whether such misconduct has occurred." *United States v. Fisch*, No. CR H-11-722, 2018 WL 2335743, at *4-5 (S.D. Tex. May 23, 2018) (citing *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 808-09 (5th Cir. 2003)).

Here, Metro appears to rely on the same arguments for why sanctions against Frazin's attorney are warranted under a court's inherent power to sanction that it made in support of its request for sanctions under § 1927. (*See* doc. 57 at 26-27.) It similarly fails to show that Frazin's attorney acted in bad faith or in some other improper or prohibited way in this action. *See Cappa Fund III, L.L.C. v. Actherm Holding, a.s.*, No. 3:10-CV-897-L, 2011 WL 817384, at *4 (N.D. Tex. Feb. 21, 2011), *adopted by* 2011 WL 816861 (N.D. Tex. Mar. 9, 2011) (denying motion for sanctions under a court's "inherent power" because defendants failed to show that plaintiff "acted

11

in bad faith or for any other prohibited reason in bringing this suit simply because they did not voluntarily dismiss a suit that was later dismissed"). While it contends that the motion misrepresented the record on appeal and the findings of the Court, it fails to specifically identify those misrepresentations. (doc. 57 at 26.)

Metro's contentions and allegations are insufficient to support a specific finding that Frazin's attorney filed and pursued the Rule 60 motion in bad faith as required for imposition of sanctions under the Court's inherent power. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (a specific finding as to whether counsel's conduct constituted or was tantamount to bad faith would have to precede any sanction under a court's inherent powers). Accordingly, its request for sanctions under the Court's inherent authority should be denied.

## IV.  RECOMMENDATION[3]

Frazin's Rule 60(b) motion and Metro's motion for sanctions against Frazin's attorney should be **DENIED**.

---

[3]While counsel are not expected to agree on matters that arise in this case, or even like each other, "the court and this district require parties and their counsel to conduct themselves with some level of civility." *See Klayman v. Obama*, No. 3:16-CV-2010-L, 2016 WL 5942227, at *6 (N.D. Tex. Oct. 12, 2016).  Given the contentious and acrimonious nature of this action, counsel are instructed "to be mindful of *Dondi Properties Corporation v. Commerce Savings & Loan Association*, 121 F.R.D. 284 (N.D. Tex. 1988), and its far-reaching implications." *Id.* Specifically, counsel are reminded that the *Dondi* Court had "admonished counsel that characterization of an opposing party's conduct as acting in bad faith 'should be sparingly employed by counsel and should be reserved for only those instances in which there is a sound basis in fact demonstrating a party's deliberate and intentional disregard of an order of the court or of obligations imposed under applicable Federal Rules.'" *See Andra Grp., LP v. JDA Software Grp., Inc.*, No. 3:15-MC-11-K-BN, 2015 WL 5459635, at *3 (N.D. Tex. Sept. 16, 2015) (quoting *Dondi*, 121 F.R.D. at 289).

**SO RECOMMENDED** on this 26th day of September, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE